## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

| | |
|---|---|
| IN RE: | ) |
| | ) |
| TOMMY DEWAYNE DOBSON, | ) |
| | ) Case No.: 23-60148 |
| and | ) |
| | ) |
| ANNE CHRISTINE DOBSON, | ) Chapter 11 |
| | ) |
| Debtors. | ) |
| | ) |
| TERRY LYNN, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TOMMY DEWAYNE DOBSON, | ) |
| | ) Adv. Proc. No.: |
| and | ) |
| | ) |
| ANNE CHRISTINE DOBSON, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

COMES NOW, Plaintiff Terry Lynn, by counsel, and hereby files this Complaint objecting to the dischargeability of Defendants Tommy Dewayne Dobson and Anne Christine Dobson's (Debtors') debt to Plaintiff, and request for further relief. The grounds for this Complaint are as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334; 11 U.S.C. §523 and Federal Rule of Bankruptcy Procedure 7001.

2. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

3. The Debtors have consented to jurisdiction.

4. Venue is proper in this district pursuant to 28 U.S.C. §1409(a).

## PARTIES

5. Terry Lynn is an individual residing in Albemarle County in the Commonwealth of Virginia.

6. Tommy Dewayne Dobson is an individual residing in Albemarle County in the Commonwealth of Virginia. Mr. Dobson filed for protection under Chapter 11 of the Bankruptcy Code on February 7, 2023 (the Petition date) and was assigned Case Number: 23-60148.

7. Anne Christine Dobson is an individual residing in Albemarle County in the Commonwealth of Virginia. Mrs. Dobson filed for protection under Chapter 11 of the Bankruptcy Code on February 7, 2023 (the Petition date) and was assigned Case Number: 23-60148.

8. From its inception, Tommy Dobson has served as the president and director of Dobson Homes, Inc.

9. From its inception, Anne Christine Dobson has served as an agent and the secretary/treasurer of Dobson Homes, Inc.

## FACTS

10. In September of 2020, Terry Lynn began discussions with Tommy Dobson regarding the construction of a custom home, an event barn, a road and fencing on her property in Albemarle County. (Hereinafter referred to as the "Project.")

11. During these meetings, Tommy Dobson emphasized the ability of Dobson Homes, Inc. to move forward and complete the construction of Terry Lynn's Project.

12. During the meetings, Tommy Dobson represented that the deposit to be paid by Terry Lynn would ensure the Project was in line for startup, and would be applied solely toward the cost of the Project.

13. While meeting with Terry Lynn in September of 2020, Tommy Dobson knew Dobson Homes, Inc. was financially unable to start or complete Terry Lynn's Project.

14. While meeting with Terry Lynn, Tommy Dobson knew he was overextended financially and in arrears for personal and company debts. During this time, Tommy Dobson, and Christine Dobson both knew they had no financial ability to address those overdue accounts and bills unless they collected deposits from new clients.

15. While meeting with Terry Lynn, Tommy Dobson and Christine Dobson knew they were in financial trouble as both of them signed a deed of trust over to Better Living due to their delinquency in making payments for supplies provided. (A copy of this deed of trust is attached hereto as Exhibit "1".)

16. While meeting with Terry Lynn, Tommy Dobson and Christine Dobson knew they were in financial trouble as they were borrowing money from a realtor to complete a house.

17. While meeting with Terry Lynn, Tommy Dobson and Christine Dobson knew that any deposit made by Terry Lynn would be placed in the general operating account for Dobson Homes, Inc. and used to pay the outstanding bills that had no relation to Terry Lynn's Project.

18. Tommy Dobson presented Terry Lynn with a contract, knowing the money would be used for purposes other than Terry Lynn's Project, and knowing his use of Terry Lynn's money for purposes other than her Project would cause her financial injury and damages.

19. In that regard, Terry Lynn made numerous statements to Tommy Dobson regarding her

3

financial limits for the Project.

20. Tommy Dobson and Christine Dobson willfully misrepresented what they would do with Terry Lynn's deposit, callously ignoring how this would affect her financially and the Project.

21. Despite knowing that any deposit paid by Terry Lynn would be placed in the general operating account for Dobson Homes, Inc., and used to pay bills that had nothing to do with Terry Lynn's Project, Tommy Dobson presented Terry Lynn with a contract containing the following language:

> 5. **DEPOSIT; ACCOUNTING; DRAW REQUESTS; MECHANIC'S LIEN AGENT.** *Owner shall make the DEPOSIT directly to the Contractor. The Contractor shall apply the Deposit toward the Work and construction of the improvements to the Property only to no other project or undertaking by the Contractor…"* (A copy of the contract is attached hereto as Exhibit "2.")

22. At the time Tommy Dobson presented the contract to Terry Lynn, he intended to deceive Terry Lynn as to how her money would be used and his ability to complete the Project.

23. Based upon the misrepresentations given by Tommy Dobson, on or about June 1, 2021, Terry Lynn entered into a Design Build Contract (the "Contract") with Dobson Homes, Inc. for the construction of a residence along with roads, fencing and an event barn (the "Project").

24. Pursuant to the contract, on June 1, 2021, Terry Lynn deposited the sum of One Hundred Five Thousand Dollars ($105,000.00) with Christine Dobson and Tommy Dobson. A copy of the deposit check is attached hereto as Exhibit "3."

25. But for the misrepresentations made by Tommy Dobson regarding his ability to complete the Project, and how her money would be used, Terry Lynn would not have entered into the Contract.

26. As soon as Terry Lynn signed the Contract, Christine Dobson showed up in Earlysville to pick up the deposit check.

27. Christine Dobson picked up Terry Lynn's deposit knowing that the money would be used for purposes other than Terry Lynn's Project.

28. But for the misrepresentations made regarding the use of the deposit, Terry Lynn would not have given Christine Dobson One Hundred Five Thousand Dollars ($105,000.00).

29. At the time Terry Lynn signed the contract and gave Christine Dobson the deposit, Tommy Dobson, and Christine Dobson both knew they were over-extended in their accounts and owed hundreds of thousands of dollars to suppliers, subcontractors, service providers, individuals and banks, and that the representations being made to Terry Lynn regarding her Project and deposit were false, misleading and fraudulent.

30. When Christine Dobson picked up Terry Lynn's deposit, she knew the One Hundred Five Thousand Dollars ($105,000.00) would be deposited into Dobson Home, Inc.'s general operating account and used to pay overdue and outstanding bills that had nothing to do with Terry Lynn's Project.

31. Despite the terms of the Contract, the One Hundred Five Thousand Dollar ($105,000.00) deposit made by Terry Lynn was deposited into Dobson Homes Inc.'s general operating account and spent on expenses unrelated to Terry Lynn's Project.

32. At no point in time have Tommy or Christine Dobson accounted for Terry Lynn's One Hundred Five Thousand Dollar ($105,000.00) deposit.

33. Pursuant to the terms of the Contract, the Project was supposed to start in August of 2021.

34. Throughout the rest of 2021, Tommy Dobson misrepresented that an application for a

building permit had been submitted, when in fact an application for a building permit was not submitted to the Albemarle County Building Department until 2022.

35. The misrepresentations regarding the building permit were made to prevent Terry Lynn from requesting a return of her deposit.

36. In July of 2022, employees of Dobson Homes, Inc. came and removed timber from Terry Lynn's house site.

37. Tommy Dobson represented to Terry Lynn that she would be given credit for the timber, all the while knowing any money received would be spent on purposes unrelated to her Project.

38. But for the misrepresentations of Tommy Dobson, Terry Lynn would not have allowed him to remove timber from her property, but would have engaged a separate timber company.

39. At no point in time have Tommy or Christine Dobson accounted for the money from the timber.

40. Despite having collected a One Hundred Five Thousand Dollar ($105,000.00) deposit and monies for the timber removed from the project, on August 2, 2022, Christine Dobson sent a draw request to Terry Lynn seeking additional monies.

41. At the time of this request, the Project site was full of debris left from removing the timber.

42. The draw request from Christine Dobson was made without providing an accounting for the One Hundred Five Thousand Dollar ($105,000.00) deposit or the monies received for the timber.

43. Christine Dobson sent this August 2, 2022, draw request knowing the One Hundred Five Thousand Dollar ($105,000.00) deposit made by Terry Lynn and money received for timber had been spent for bills and expenses unrelated to Terry Lynn's Project.

44. Christine Dobson and Tommy Dobson made this August 2, 2022 draw request with full knowledge that Terry Lynn's deposit had been spent on expenses unrelated to the Project, and any additional monies received from Terry Lynn would be deposited in Dobson Homes, Inc.'s general operating account and used to pay outstanding bills and invoices unrelated to the Project.

45. At the time Tommy Dobson and Christine Dobson made this draw request, they knew that the representations being made regarding the need and planned use for this money were false, misleading, and fraudulent.

46. Despite having spent Terry Lynn's One Hundred Five Thousand Dollar ($105,000.00) deposit and being Hundreds of Thousands of dollars behind in payments to suppliers, service providers, individuals, banks and subcontractors, Tommy Dobson and Christine Dobson had gravel delivered to Terry Lynn's project and did not pay for the same.

47. Tommy Dobson and Christine Dobson knew that a failure to pay for deliveries to Terry Lynn's property would result in injury.

48. Luck Stone's claim filed in Bankruptcy case number 23-60148 included invoices totaling Four Thousand Nine Hundred Seventy-One Dollars and seven cents ($4,971.07) for unpaid gravel delivered to Terry Lynn's Project. (Copies of these invoices are attached hereto as Exhibit "4.")

49. On or about January 4, 2023, Terry Lynn filed a civil suit against Tommy Dobson, Christine Dobson and Dobson Homes, Inc. in the Albemarle County Circuit Court bearing case number CL2300016-00.

50. After filing answers in the Circuit Court, Tommy Dobson and Christine Dobson filed for Bankruptcy.

51. All of the actions of Tommy Dobson and Christine Dobson as described above make the

debt owed to Terry Lynn nondischargeable in bankruptcy.

## COUNT I
## NON DISCHARGEABILITY OF DEBT DUE TO EMBEZZLEMENT UNDER 11 U.S.C. §523(a)(4)

52. The allegations contained in paragraphs 1 through 51 are incorporated herein by reference as if fully set forth.

53. A discharge under 11 U.S.C. §727 does not discharge Debtors from debts that arise from embezzlement. See 11 U.S.C. §523(a)(4).

54. As set forth in paragraphs 1-51 above, throughout the time Tommy Dobson and Christine Dobson were meeting with Terry Lynn, they were falsely representing the use of her deposit, their ability to start or complete the Project, the use of monies from the sale of timber, and the need for her to pay additional funds.

55. Tommy Dobson and Christine Dobson fraudulently misappropriated Terry Lynn's deposit and money from the sale of her timber to the detriment of Terry Lynn.

56. During discussions held with Terry Lynn in March and April of 2021, Tommy Dobson, acting individually and as an agent for Dobson Homes, Inc., represented he could start and finish the Project. He represented that the deposit, as well as all other monies paid to Dobson Homes, Inc. under the Contract would be applied towards the Project. He made these representations knowing they were false.

57. Christine Dobson, acting individually and as an agent for Dobson Homes, Inc. picked up the deposit and furthered the embezzlement by stating how she was excited to get started, all the while knowing the deposit would be used for purposes other than the Project, and her

representations were false.

58. On August 2, 2022, Christine Dobson, acting individually and as an agent for Dobson Homes, Inc. requested additional monies claiming they were needed for the Project all the while knowing the funds would be spent for other purposes, and knowing her representations were false.

59. These statements by both Christine Dobson and Tommy Dobson were knowingly false when made and constituted false representations of material fact.

60. The statements were made with the intention to deceive Terry Lynn to sign the Contract, pay a deposit, and give Tommy Dobson and Christine Dobson additional money.

61. Tommy Dobson and Christine Dobson knew at the time they took Terry Lynn's One Hundred Five Thousand Dollar ($105,000.00) deposit that they were overextended on other projects and bills and that they would use Terry Lynn's One Hundred Five Thousand Dollar ($105,000.00) deposit, for their own purposes and not her Project.

62. Tommy Dobson and Christine Dobson knew when they had timber removed from Terry Lynn's property that they would use the money from the timber for their own purposes.

63. Tommy Dobson and Christine Dobson knew at the time they made the August 2, 2022, draw request that they were overextended on other projects and bills, and they would use the money from the draw request for purposes unrelated to Terry Lynn's Project.

64. Tommy Dobson and Christine Dobson made representations regarding the use of the One Hundred Five Thousand Dollar ($105,000.00) deposit and the August 2, 2022, draw request knowingly, intentionally, with the intent to mislead Terry Lynn, and induce her to enter into a contract and give them money. These representations were made when Debtors knew they were unable to perform the Contract and knew the money would be used for their own purposes, not

Terry Lynn's Project. These representations were for the purpose of obtaining monies under false pretenses and constitute embezzlement.

65. Terry Lynn relied on these statements to her detriment in entering into the Contract and in paying the One Hundred and Five Thousand Dollar ($105,000.00) deposit.

66. Terry Lynn has been damaged as a result of Tommy Dobson and Christine Dobson's embezzlement in the amount of the One Hundred Five Thousand Dollars ($105,000.00), which has been spent by the defendants for purposes unrelated to the Project.

67. This embezzlement was furthered by selling timber from Terry Lynn's property for their own purposes to the detriment of Terry Lynn

68. Tommy Dobson and Christine Dobson acted willfully, wantonly and with actual malice or, in the alternative, with such recklessness as to evince a conscious disregard for the rights of Terry Lynn.

69. Terry Lynn requests a non-dischargeable judgment against Tommy Dobson and Christine Dobson in the amount of One Hundred Fifty-Five Thousand Dollars ($155,000.00), plus punitive damages pursuant to Virginia common law in an amount deemed just and appropriate by the Court.

**COUNT II**
**NON DISCHARGEABILITY OF DEBT DUE TO OBTAINING MONEY UNDER FALSE PRETENSES, FALSE REPRESENTATIONS AND/OR ACTUAL FRAUD UNDER 11 U.S.C. §523(a)(2)(A) (Fraud)**

70. The allegations contained in paragraphs 1 through 69 are incorporated by reference as if fully set forth herein.

71. A discharge under 11 U.S.C. §727 does not discharge the Debtors from any debt that arises from false representations or fraud. See 11 U.S.C. §523(a)(2).

72. Tommy Dobson and Christine Dobson made fraudulent representations to Terry Lynn during the 2020 negotiations leading up to her signing the contract and giving them a deposit on June 1, 2021.

73. Tommy Dobson and Christine Dobson made additional false representations in August of 2022 when requesting additional monies through a draw request.

74. These fraudulent representations consisted of statements that the monies being collected as a deposit and draw requests were for her Project when all along, they knew the monies would be deposited into a general operating account and used for purposes unrelated to the Project.

75. At the time Tommy Dobson and Christine Dobson made these representations they knew they were false.

76. Tommy Dobson and Christine Dobson intended to deceive Terry Lynn at the time they made the false representations.

77. Terry Lynn, in reasonable reliance on Tommy Dobson and Christine Dobson's misrepresentations, signed the contract; gave Christine Dobson a One Hundred Five Thousand Dollar ($105,000.00) deposit, and agreed to move forward with the Project.

78. Were it not for Tommy Dobson and Christine Dobson's misrepresentations, Terry Lynn would not have signed the contract and would not have given them a deposit of One Hundred Five Thousand Dollars ($105,000.00).

79. Tommy Dobson and Christine Dobson's fraudulent misrepresentations and continued actions to hide the misrepresentations, resulted in the conversion of One Hundred Five Thousand Dollars ($105,000.00) of Terry Lynn's funds.

80. Terry Lynn requests a non-dischargeable judgment against Tommy Dobson and Christine

Dobson in the amount of One Hundred Five Thousand Dollars ($105,000.00), plus punitive damages pursuant to Virginia common law in an amount deemed just and appropriate by the Court.

### COUNT III
### NON DISCHARGEABILITY OF DEBT DUE TO OBTAINING MONEY BY USE OF A WRITING THAT WAS MATERIALLY FALSE, PRESENTED WITH THE INTENT TO DECEIVE UNDER 11 U.S.C. §523(a)(2)(B)
### (Virginia Consumer Protection Act)

81. The allegations contained in paragraphs 1 through 80 are incorporated by reference as if fully set forth herein.

82. Virginia Code §§59.1-200(A)(11), and (14) prohibits the "misrepresenting by the use of any written or documentary material that appears to be an invoice or bill for merchandise or services previously ordered;" and "[u]sing any other deception, fraud, false pretense, promise, or misrepresentation in connection with a consumer transaction."

83. Terry Lynn's contract with the Debtors was a consumer transaction.

84. The Debtors violated the VCPA by using Terry Lynn's deposit of One Hundred Five Thousand Dollars ($105,000.00) for purposes unrelated to Terry Lynn's Project.

85. The Debtors violated the VCPA by using deception, fraud, and misrepresentations by requesting a deposit of One Hundred Five Thousand Dollars ($105,000.00) from Terry Lynn and claiming it only would be used for her Project, all the while knowing it would be uses for purposes unrelated to her Project.

86. The Debtors further violated the VCPA by making the August 2, 2022 draw request knowing the money was not due and they had converted Terry Lynn's deposit.

87. Terry Lynn, in reasonable reliance on the Debtors' misrepresentations, signed the contract,

paid a One Hundred Five Thousand Dollar ($105,000.00) deposit and agreed to move forward with Dobson Homes, Inc. building her Project.

88. Were it not for the Debtors' misrepresentations, Terry Lynn would not have signed the contract and would not have handed over a One Hundred Five Thousand Dollar ($105,000.00) deposit.

89. The Debtors' fraudulent misrepresentations resulted in the conversion of One Hundred Five Thousand Dollars ($105,000.00) of Terry Lynn's funds.

90. Terry Lynn requests a non-dischargeable judgment against the Debtors in the amount of One Hundred Five Thousand Dollars ($105,000.00), plus an additional Three Hundred Fifteen Thousand Dollars ($315,000.00) as treble damages under the VCPA.

## COUNT IV
## NON DISCHARGEABILITY OF DEBT DUE TO LARCENY
## UNDER 11 U.S.C. §523(a)(4)

91. The allegations contained in paragraphs 1 through 90 are incorporated by reference as if fully set forth herein.

92. Christine Dobson and Tommy Dobson's use of Terry Lynn's One Hundred Five Thousand Dollar ($105,000.00) deposit for purposes unrelated to Terry Lynn's Project constitutes larceny.

93. In that regard, Christine Dobson, and Tommy Dobson's use of Terry Lynn's One Hundred Five Thousand Dollars ($105,000.00) was done with the intent to convert these funds to their own use and deprive Terry Lynn of these funds.

94. Debtors' removal of timber from Terry Lynn's property for purposes unrelated to Terry Lynn's Project and their failure to account for the value of the timber in the amount of Fifty Thousand Dollars ($50,000.00) was done with the intent to convert the funds from this timber for

their own use and deprive Terry Lynn of these funds, constitutes larceny.

95. These debts are non-dischargeable due to the larceny committed by the Debtors.

96. Terry Lynn requests a non-dischargeable judgment against the Debtors in the amount of One Hundred Five Thousand Dollars ($105,000.00), plus Fifty Thousand Dollars ($50,000.00) for timber, plus punitive damages pursuant to Virginia common law in an amount deemed just and appropriate by the Court.

WHEREFORE, Plaintiff requests that this Court enter an Order:

97. Finding that the debt owed by Tommy Dewayne Dobson and Anne Christine Dobson in the amount of One Hundred Five Thousand Dollars ($105,000.00), plus interest at the statutory rate from June 1, 2021, is non-dischargeable under 11 U.S.C. §523 (a)(4); 11 U.S.C. §523(a)(2)(B) and 11 U.S.C. §523(a)(2)(A);

98. Finding that the debt owed by Tommy Dewayne Dobson and Anne Christine Dobson in the amount of Fifty Thousand Dollars ($50,000.00) for the larceny of timber is non-dischargeable under 11 U.S.C. §523(a)(2) and (4);

99. Finding that the treble damages in the amount of Three Hundred Fifteen Thousand Dollars ($315,000.00) allowable under the Virginia Consumer Protection Act against Christine Dobson and Tommy Dobson, is non-dischargeable under 11 U.S.C. §523(a)(2)(B);

100. Finding that the punitive damages in the amount of One Hundred Five Thousand Dollars ($105,000.00) for fraud, embezzlement, obtaining money under false pretenses and larceny against Christine Dobson and Tommy Dobson is non-dischargeable pursuant to 11 U.S.C. §523(a)(2) and (4);

101. Determining that the foregoing debts to Terry Lynn are excepted from discharge;

102. Granting any additional damages proven by Terry Lynn at trial in this matter or granting any alternative remedies as deemed just and appropriate by the Court.

                RESPECTFULLY SUBMITTED,

                TERRY LYNN
                By Counsel

/s/Terry Lynn, Esq._____
Terry Lynn, Esquire (VSB No. 39926)
Law Offices of Terry Lynn PLLC
695 Bent Oaks Drive
PO Box 374
Earlysville, VA  22936
Phone:  (434) 964-9152
Fax: (434) 964-9275
E-mail:  terry@terrylynnlaw.com

**CERTIFICATE**

I hereby certify that on this 4th day of May 2023, the foregoing was filed electronically with the U.S. Bankruptcy Court and was served on those parties who are CM/ECF participants.

/s/Terry Lynn, Esq.
Terry Lynn Esquire (VSB No. 39926)
Law Offices of Terry Lynn PLLC
695 Bent Oaks Drive
PO Box 374
Earlysville, VA 22936
Phone: (434) 964-9152
Fax: (434) 964-9275
E-mail: terry@terrylynnlaw.com

M:\Lynn V. Tommy & Christine Dobson Bankruptcy\Adversary Proceeding Pleadings\Complaint.Docx